THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:16CR403 DS |
| | ) | |
| vs. | ) | MEMORANDUM DECISION |
| | ) | AND ORDER |
| KEMP & ASSOCIATES, INC. AND | ) | |
| DANIEL J. MANNIX | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

In this motion to reconsider, the United States of America asks the court to readdress whether the Rule of Reason or the Per Se approach should apply in the present case. In light of guidance given by the Tenth Circuit, and with the benefit of full briefing, the court grants this motion and finds that the Per Se approach should apply in this case.

## I. BACKGROUND

This case began on August 17, 2016 when the United States of America indicted Kemp & Associates, a Utah Corporation, and Daniel J. Mannix, Chief Operating Officer of Kemp (Collectively "Defendants") on one count of violating § 1 of the Sherman Act. *Indictment*, 3. The indictment accused Defendants of seeking to suppress and eliminate competition by agreeing to allocate customers of Heir Location Services sold in the United States. *Id*. On June 21, 2017, the parties appeared before Judge Sam to argue several motions, including a motion to order that the case be subject to the Rule of Reason, and a motion Dismiss the Indictment. Upon completion of oral testimony on the matter, Judge Sam ruled from the bench that the case should be subject to the Rule of Reason and not the Per Se approach, while the Motion to Dismiss was

taken under advisement. On August 28, 2017, Judge Sam issued a written order that the Indictment be dismissed as barred by the statute of limitations. *Memorandum Decision and Order*, 2:16CR403 DS (Utah, 2017). Following Judge Sam's decision, the United States appealed to the Tenth Circuit Court of Appeals on September 26, 2017. On October 31, 2018, the Tenth Circuit issued a decision reversing the district court regarding the statute of limitations issue, and ruling that while it did not have statutory authority to overturn the district court's decision regarding application of the Rule of Reason, it would encourage the court to reconsider its decision with the advantage of more complete briefing on the matter. *United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1278 (10th Cir. 2018). On December 14, 2018, the United States filed a Motion to Reconsider whether the Rule of Reason or the Per Se approach should apply in the case.

## II. ANALYSIS

**A. Overview**

The United States asks the court to reconsider whether the Rule of Reason or the Per Se approach should apply in the present case. Although the Sherman Act could be read more broadly, the Supreme Court has consistently ruled that it outlaws only *unreasonable restraints* of trade. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007). In determining whether a particular restraint is unreasonable, courts generally apply the "Rule of Reason." *Kemp*, 907 F.3d at 1272. In applying the Rule of Reason, the factfinder weighs all attendant circumstances of a case, and then decides whether the practice imposes an unreasonable restraint on competition. *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977). Thus, under the Rule of Reason, a defendant can introduce evidence of the challenged restraint's

2

positive effects on competition, and if the good outweighs the bad, a court can find that the practice does not violate the Sherman Act.

However, an exception to the Rule of Reason exists for "agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958). Under this exception, called the "Per Se" approach, the government prevails merely by proving the existence of a prohibited arrangement. *Id*. If the government can prove that such an agreement exists, then the analysis ends without inquiry into the possible economic benefits the agreement could bring. *In re Cox Enters., Inc.*, 871 F.3d 1093, 1097 (10th Cir. 2017). This provides an evidentiary shortcut through the Rule of Reason's minutiae; in such cases, the Per Se approach is justified based on efficiency. *Arizona v. Maricopa Cty. Med. Soc'y*, 457 U.S. 332, 344 (1982).

Because the Per Se approach creates such an uphill battle for defendants, its application is limited solely to agreements that are "so plainly anticompetitive that no elaborate study of the industry is needed to establish illegality." *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). Thus, "[i]t is only after considerable experience with certain *business relationships* that courts classify them as per se violations of the Sherman Act." *United States v. Topco, Inc.*, 405 U.S. 596, 607-08 (1972) (emphasis added). This requires that the court have experience with the particular *practice* being challenged, and need not have experience within the specific *industry* in which the allegedly unlawful practice was used. *Maricopa Cty. Med. Soc'y*, 457 U.S. at 351. The Per Se approach need not be "justified" for every industry that has not been subject to significant

3

antitrust litigation. *Id*. However, when special circumstances so dictate, the Per Se approach may be rendered inapplicable where it would otherwise apply but for those special circumstances. This order will analyze (1) whether the agreement is one to which the Per Se approach normally applies, and (2) if so, whether any special circumstances exist that could render it inapplicable. *See*, *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 103 (1984).

### B. Authority over the Motion to Reconsider

This Court has authority over the United States' motion for reconsideration. A motion for reconsideration should be granted only to correct errors of law, or to present newly discovered evidence. *Phelps v. Hamilton*, 122 F. 3d 1309, 1324 (10th Cir. 1997). A motion for reconsideration should not be granted merely to give the moving party a second bite at the apple. *Mantle Ranches, Inc. v. U.S. Park Service*, 950 F. Supp. 299, 300 (D. Colo. 1997). Furthermore, such motions are granted or denied at the discretion of the district court judge as every order short of a final judgement is subject to reopening at their discretion. *Price v. Philpot*, 420 F.3d 1158, 1167-68 (10th Cir. 2005). The application of the Rule of Reason or the Per Se rule is a question of law. *In re Sulfuric Acid Antitrust Litigation*, 703 F.3d 1004, 1008 (7th Cir. 2012).

Since motions for reconsideration can be granted to correct errors of law, and since the application of the Rule of Reason or the Per Se rule is a question of law, this Court has the authority to grant the motion now before it.

### C. Whether the "Guidelines" is an Agreement Subject to the Per Se Approach

The court finds that the agreement in question, known as the "Guidelines," is a horizontal customer allocation agreement, and thus subject to the Per Se approach. Horizontal customer

allocation agreements are normally subject to the Per Se approach. *United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1273 (10th Cir. 2018). To prove that such an agreement exists, a plaintiff must show: (1) An agreement between competitors (2) at the same level of the market structure (3) to allocate territories (4) in order to minimize competition. *United States v. Topco Assocs., 405 U.S. 596, 608 (1972)*. Allocation of territories includes agreements to allocate or divide *customers* between competitors within the same horizontal market. *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 473 (10th Cir. 1990). Such agreements constitute per se violations of the Sherman Act *except* in rare circumstances in which cases their legality should be determined applying the Rule of Reason. *See, e.g., Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 103 (1984). In determining whether a specific arrangement qualifies as a customer allocation agreement, it is immaterial whether the agreement applies to new or existing customers. *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 49-50 (1990). Furthermore, in making this determination, it does not matter that the alleged agreement would only affect a small number of customers. Such agreements are still subject to the Per Se approach. *United States v. Reicher*, 983 F.2d 168, 170 (10th Cir. 1992).

In analyzing whether the agreement in the present case meets the definition of a horizontal customer allocation agreement, it is undisputed that an agreement existed between Defendants and Blake & Blake, a competing heir location firm. It is also clear that Defendants and Blake & Blake performed virtually the exact same functions on behalf of clients, namely those associated with the heir location industry at large such as trips to courts to search filings of estates, genealogical work to identify the correct heirs, and location of the heirs themselves. From the symmetry of activities, it is clear that these two competitors operated at the same level

5

of the heir location market.

Furthermore, by seeking to divide new customers between the two competitors, the "Guidelines" almost certainly sought to allocate territories and minimize competition. As stated in *Palmer*, it is irrelevant that the customer allocation agreement only affected new customers; agreements to allocate only new customers are as subject to the Per Se approach as any other horizontal customer allocation agreement. Moreover, the fact that the "Guidelines" affected a small percentage of Defendant's total client base is also irrelevant. Like in *Riecher*, where the attempt to rig a *single* bid was ruled to be a per se violation of § 1 of the Sherman Act, even though only an estimated 3-5% of Defendant's work implicated the "Guidelines" such will also be a violation if found to be a customer allocation agreement.

Finally, the agreement between the parties almost certainly sought to minimize competition. By agreeing that the first firm to contact a potential heir would be the only firm to offer a price, and that said firm would share a portion of the fee eventually collected with all others subject to the agreement, defendants' effort to reduce competition is clear. This arrangement allowed the heir location service that first contacted a potential client to offer that client whatever price they chose, while being unrestrained by the natural check that the thought of competition places on business. Such an agreement is a clear attempt to minimize competition. There certainly may have been other additional reasons for entering into the agreement, as laid out by Defendants; but as laid out in *Kemp*, if the Per Se approach applies, there is no need to weigh the benefits that could come from such an agreement. Thus, the agreement in the present case is a horizontal customer allocation agreement, and therefore subject to the Per Se approach.

6

### D. Whether Any Special Circumstances Could Render the Per Se Rule Inapplicable

Certain factors can negate application of the Per Se approach when it would be otherwise applicable. *See, Nat'l Collegiate Athletic Ass'n*, 468 U.S. at 103. This court must analyze whether any of these factors apply to the present case.

One such way of avoiding the Per Se approach is to show that while the parties would otherwise be competitors, the allegedly breaching action is part of a joint venture and such actions are not subject to the Per Se rule. *Texaco*, 587 U.S. at 6. In *Texaco*, two large oil corporations who were normally competitors, jointly formed a separate entity which they used to refine and sell gasoline across the Western United States. *Id*. at 1. The joint venture entity sold gasoline to service station owners of these two oil corporations at a fixed price; the service station owners brought suit claiming that such constituted a violation of the Sherman Act. *Id*. The court disagreed, clarifying that behavior that would constitute per se violations of the Sherman Act if it occurred between competitors does not impute automatic per se liability to companies that form a joint venture because such companies are not competing. *Id*. at 6. The legality of such agreement should instead be judged by the Rule of Reason. *Id*.

Another reason for negating application of the Per Se approach cited by Defendants comes where the existence of the product depends on such an agreement, and in such cases the legality of these agreements should be determined applying the Rule of Reason. *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 103 (1984) (hereinafter "*NCAA*"). In *NCAA*, the NCAA, worried about the effect that broadcasting college football games on live television would have on game attendance, instituted a plan wherein it limited the

number of games that could be broadcast each week and by any one team. *Id*. at 85. The member institutions challenged this plan claiming it was a per se violation of the Sherman Act. However, the court refrained from application of the Per Se approach recognizing a small exception for when the viability of the product depends on anticompetitive restraint and that such situations should be evaluated using the Rule of Reason. *Id*. at 103.

In comparing the present case to the standard announced in *Texaco*, it is clear that no such joint venture existed between Defendants and Blake & Blake. Unlike in Texaco where the defendants formed a separate entity to carry out the activities of the joint venture, there is no evidence that such an entity was formed between Defendants and others working in the heir location industry. Furthermore, unlike in *Texaco* where the Defendants pooled their resources to form the new entity, there is no evidence that such occurred in the present case. Finally, in *Texaco,* the Defendants, as co-owners of the joint venture entity shared the risk of loss and the opportunity to profit. The present case is again dissimilar; while the fees paid by the first heir location company to competitors who also contacted the same heir may represent some sort of opportunity to profit shared by all parties, it is far from the structure of the agreement anticipated by the court in *Texaco*. In *Texaco*, the profits or losses resulted from the efforts of the co-owned joint venture; if the venture succeeded all parties would profit and if it failed they would all lose. This does not appear to be the arrangement of the present case wherein a fee was paid to other competitors who also contacted a certain heir as incentive not to compete. Such an arrangement does not meet the court's definition in *Texaco*. Therefore, the court finds that Defendants and their co-conspirators did not form a joint venture, and thus no such defense negates the application of the Per Se approach.

Any argument that, like in *NCAA*, the viability of the heir location industry depends upon some sort of anticompetitive restraint is also unpersuasive. Both Defendants and their co-conspirators existed prior to the agreement, and such services continue to exist today. Moreover, unlike in *NCAA* where the plaintiffs were member institutions that made up a league with defined rules and procedures, such is not the case in most industries, presumably including the national heir location service market. Thus, no such special circumstances existed that would hinder the court from applying the Per Se approach to the customer allocation agreement in the present case.

### E. Reasons Given Originally by the District Court

This court originally cited three reasons for applying the Rule of Reason, namely the fact that the agreement (1) was structured in an unusual way in that it only applied to new customers, (2) affected only a small number of customers, those who were contacted by more than one heir location service and (3) occurred in an obscure industry with an unusual manner of operation.

Although all three of these reasons have been addressed at other points herein, in summary, the decision handed down by the Supreme Court and the Tenth Circuit make it clear that these reasons should not keep this court from now ruling that the Per Se approach applies to the present case. As stated in *Palmer*, when determining whether a specific arrangement qualifies as a customer allocation agreement, it is immaterial whether the agreement applies to new or existing customers. *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 49-50 (1990). Furthermore, as the court in *Reicher* ruled, it does not matter that the alleged agreement would only affect a small number of customers, and such agreements are still subject to the Per Se approach. 983 F.2d 168, 170 (10th Cir. 1992). Finally, as clarified in *Maricopa*, while the heir location service is undoubtedly a niche industry unfamiliar to this court, it is experience with the

9

types of *agreement* at issue, not the industry in which it appears that determines whether application of the Per Se approach is applicable. 457 U.S. at 351. Based on the clarification gained through the benefit of full briefing on the issues, it is clear that the reasons originally proffered by this Court should not negate application of the Per Se approach.

### III. CONCLUSION

Based on the above analysis, the court finds that the Per Se approach should apply to the present case. The "Guidelines" constitute a horizontal customer allocation agreement, a type of agreement that normally is subject to the Per Se approach. Furthermore, none of the "special circumstances" that courts have found as reasons to not apply the Per Se approach are present in this case. Finally, with the benefit of full briefing it is clear that the reasons originally proffered should not negate application of the Per Se approach. For the foregoing reasons, The United States' Motion for Reconsideration is ***granted***.

SO ORDERED.

DATED this 20th day of February, 2019.

BY THE COURT: _____

DAVID SAM
SENIOR JUDGE
U.S. DISTRICT COURT